**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MARK FRANKEL, on behalf of himself and others
similarly situated,

                              Plaintiff,

              -against-

CITICORP INSURANCE SERVICES, INC.,
CITICORP VISA, INC., CITICORP
MASTERCARD, INC., CITIBANK (SOUTH
DAKOTA), N.A. and CITIBANK, N.A.,

                              Defendants.

Case No. 11-CV-2293 (NGG) (RER)

**Document No. 61**

**Electronically Filed and Served on
December 19, 2014**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF MARK FRANKEL'S RELY MEMORANDUM
IN FURTHER SUPPORT OF PLAINTIFF'S OBJECTION
TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
270 Madison Avenue
New York, New York 10016
(212) 545-4600

HARRY I. KATZ, P.C.
61-25 Utopia Parkway
Fresh Meadows, New York 11365
(718) 463-3700

*Attorneys for Plaintiff Mark Frankel*

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES.................................................................................Iiii

ARGUMENT.......................................................................................................1

    I.     The First Amendment Issue is Properly before the Court......................................1

    II.    The Supreme Court's FAA Decisions Do Not Control the Constitutional Issue ....3

    III.   Plaintiff Amply Alleges State Action ..................................................................5

    IV.   The FAA's Text is Ambiguous, so the Avoidance Doctrine Applies....................6

    V.    The 1925 Congress had No Clear Intent to Infringe the Petition Clause...............8

    VI.   Private Lawsuits are Protected Petitions under the First Amendment...................9

    VII.  The FAA, As Applied, Violates the Petition Clause .............................................9

    VIII. Plaintiff Did Not Waive His Right to Petition a Government Court ...................12

CONCLUSION...................................................................................................15

**TABLE OF AUTHORITIES**

**CASES**                                                                 **Page(s)**

*Acevedo v. Surles,*
  778 F. Supp. 179 (S.D.N.Y. 1991) ........................................................................ 11

*Allen v. UPS,*
  988 F. Supp. 2d 293 (E.D.N.Y. 2013) .................................................................... 3

*Allied-Bruce Terminix Cos., Inc. v. Dobson,*
  513 U.S. 265 (1995) ................................................................................................. 8

*Allstar Homes v. Waters,*
  711 So. 2d 924 (Ala. 1997) .................................................................................... 15

*Atalese v. United States Legal Services, Group, L.P.,*
  219 N.J. 430 (2014) ............................................................................................... 15

*BE&K Construction Co. v. NLRB,*
  536 U.S. 516 (2002) ................................................................................................. 5

*Boddie v. Alexander,*
  356 F. App'x 438 (2d Cir. 2009) .......................................................................... 11

*Borough of Duryea v. Guarnieri,*
  131 S. Ct. 2488 (2011) ........................................................................................... 10

*Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund,*
  937 F.2d 752 (2d Cir. 1991) .................................................................................... 3

*Chambers v. Baltimore & Ohio Railroad Co.,*
  207 U.S. 142 (1907) ................................................................................................. 5

*Circuit City Stores, Inc. v. Adams,*
  532 U.S. 105 (2001) ................................................................................................. 8

*Citizens United v. FEC,*
  558 U.S. 310 (2010) ................................................................................................. 5

*City of New York v. Beretta U.S.A. Corp.,*
  524 F.3d 384 (2d Cir. 2008),
  *cert. denied,* 556 U.S. 1004 (2009) ..................................................................... 10

*Curtis Publishing Co. v. Butts,*
  388 U.S. 130 (1967) ............................................................................................... 13

*Denver Area Education Telecommunications Consortium v. FCC,*
  518 U.S. 727 (1996) ................................................................................6

*Desiderio v. NASD,*
  191 F.3d 198 (2d Cir. 1999) .....................................................................6

*Dodson v. Board of Education,*
  14-cv-0116 (JS) (AKT),
  2014 U.S. Dist. LEXIS 118092 (E.D.N.Y. Aug. 25, 2014) ....................14

*Doe v. Marsh,*
  96-7456,
  1997 U.S. App. LEXIS 5065 (2d Cir. Mar. 17, 1997) ...................... 13, 15

*Erie Telecommunications v. Erie,*
  853 F.2d 1084 (3d Cir. 1988) .................................................................14

*Franco v. Kelly,*
  854 F.2d 584 (2d Cir. 1988) ...................................................................10

*Fuentes v. Shevin,*
  407 U.S. 67 (1972) ..................................................................................14

*Gagliardi v. Village of Pawling,*
  18 F.3d 188 (2d Cir. 1994) .....................................................................10

*Goldman, Sachs & Co. v. Golden Empire Schools Financing Authority,*
  764 F.3d 210 (2d Cir. 2014) ...................................................................15

*GTFM , LLC v. TKN Sales, Inc.,*
  257 F.3d 235 (2d Cir. 2001) ...................................................................15

*Grullon v. City of New Haven,*
  720 F.3d 133 (2d Cir. 2013) ...................................................................12

*Hall Street Associates, L.L.C. v. Mattel, Inc.,*
  552 U.S. 576 (2008) ................................................................................11

*Hancock v. AT&T Co., Inc.,*
  804 F. Supp. 2d 1196 (W.D. Okla. 2011).................................................10

*Hancock v. AT&T Co., Inc.,*
  10-822-W,
  2011 U.S. Dist. LEXIS 93928 (W.D. Okla. Aug. 11, 2011),
  *aff'd on other grounds,* 701 F.3d 1248 (10th Cir. 2012).........................10

*Homa v. American Express,*
  494 F. App'x 191 (3d Cir. 2012) ..................................................................................4

*Hynes v. Squillance,*
  143 F.3d 653 (2d Cir. 1998) ........................................................................................3

*Katz v. Cellco Partnership,*
  No. 12-CV-9193 (VB),
  2013 U.S. Dist. LEXIS 176784 (S.D.N.Y. Dec. 12, 2013) ........................................6

*Kouichi Taniguchi v. Kan Pacific Saipan, Ltd.,*
  132 S. Ct. 1997 (2012) ................................................................................................9

*Legal Aid Society v. City of New York,*
  114 F. Supp. 2d 204 (S.D.N.Y. 2000) .................................................................14, 15

*Milner v. Department of the Navy,*
  131 S. Ct. 1259 (2011) ................................................................................................9

*Morello v. James,*
  810 F.2d 344 (2d Cir. 1987) ......................................................................................11

*Morris v. New York City Employees' Retirement System,*
  129 F. Supp. 2d 599 (S.D.N.Y. 2001) ................................................................14, 15

*Murray v. Town of North Hempstead,*
  853 F. Supp. 2d 247 (E.D.N.Y. 2012) ...........................................................13, 14, 15

*NAACP v. Button,*
  371 U.S. 415 (1963) ...................................................................................................11

*Nitro-Lift Technologies, L.L.C. v. Howard,*
  133 S. Ct. 500 (2012) ..................................................................................................5

*Oneida Indian Nation v. New York,*
  691 F.2d 1070 (2d Cir. 1982) ..................................................................................3-4

*Pierre v. Holder,*
  738 F.3d 39 (2d Cir. 2013) ..........................................................................................8

*Red Cross Line v. Atlantic Fruit Co.,*
  264 U.S. 109 (1924) .....................................................................................................6

*Sandifer v. United States Steel Corp.,*
  134 S. Ct. 870 (2014) ..................................................................................................9

*Smith v. Arkansas State Highway Employees,*
  441 U.S. 463 (1979) ...................................................................................... 11, 12

*State v. Green,*
  96 N.Y.2d 403 (2001) ........................................................................................ 4

*Stevens v. Webb,*
  12-cv-2909 (KAM),
  2014 U.S. Dist. LEXIS 37874 (E.D.N.Y. Mar. 21, 2014) .................................. 4

*Struthers v. UBS Financial Services,*
  No. 08-CV-1381 H (JMA),
  2009 U.S. Dist. LEXIS 38671 (S.D. Cal. May 7, 2009) ................................... 10

*Topps Chewing Gum v. Fleer Corp.,*
  799 F.2d 851 (2d Cir. 1986) ............................................................................. 4

*United States v. Enas,*
  255 F.3d 662 (9th Cir. 2001) ............................................................................ 4

*United States v. Jin Fuey Moy,*
  241 U.S. 394 (1916) ........................................................................................ 11

*United States v. Magassouba,*
  544 F.3d 387 (2d Cir. 2008) ............................................................................ 8

*United States ex re. Attorney General v. Delaware & Hudson Co.,*
  213 U.S. 366 (1909) ........................................................................................ 9

## STATUTES & RULES

9 U.S.C. § 2 ...................................................................................................... 7

9 U.S.C. § 3 ...................................................................................................... 11

9 U.S.C. § 9 ...................................................................................................... 11

9 U.S.C. § 10 .................................................................................................... 11

9 U.S.C. § 11 .................................................................................................... 11

28 U.S.C. § 636(b)(1) ....................................................................................... 2

Federal Rule of Civil Procedure 72(b) .............................................................. 2

U.S. Const. amend. I ........................................................................................ 12

## <u>OTHER AUTHORITIES</u>

H.R. Rep. No. 97-542 (1982) ...........................................................................................9

Margaret L. Moses, *Statutory Misconstruction: How The Supreme Court*
*Created A Federal Arbitration Law Never Enacted By Congress,*
  34 Fl. St. U.L. Rev. 99 (2006) ...........................................................................9, 12

*Webster's Encyclopedia Unabridged Dictionary of the English Language* (1996) ....................12

Defendants' response ("Br.") to Plaintiff's Objection ("Ob.") fails to recognize the gravity of either the First Amendment or the Supreme Court's case law holding that Americans have a constitutional right to sue in a government court. Defendants also fail to rebut Plaintiff's textual analysis or the legislative history showing that Congress deliberately and unequivocally excluded adhesion compulsory arbitration agreements from the FAA's purview. Defendants instead (i) pose weak technical arguments to try to avoid the First Amendment issue; (ii) persist with the jurisprudentially flawed proposition that the Supreme Court's FAA cases somehow control a constitutional question that the Supreme Court has never reached; and (iii) make easily refuted arguments that the Petition Clause does not guarantee a right to sue in court or that the right was waived. Defendants' arguments fall short, and the motion to compel should be denied.

## ARGUMENT

## I. The First Amendment Issue is Properly before the Court

Defendants' primary argument is that Plaintiff's Petition Clause challenge should not be considered because Plaintiff allegedly failed to raise it below. Br. at 8-11. Magistrate Judge Reyes rejected this argument because his June 24, 2013 Order had expressly "allowed Frankel to raise" his First Amendment concerns. R&R at 17 n.5. This Court should reject it as well.

Plaintiff's June 21, 2013 letter to Magistrate Judge Reyes requested both "permission to submit a short letter brief to identify Plaintiff's [previous] arguments that survive *Amex*" and a

> conference for purposes of seeking the Court's leave to brief a new issue that was not addressed in any of the *Amex* opinions; namely, whether the [FAA], as it is being interpreted and applied, violates the United States Constitution…. Specifically, … whether the FAA can properly be construed as a Congressional decree that permits private entities to draft adhesion contracts that deprive citizens of the First Amendment right to access justice.

Dkt. 49. The Magistrate Judge's June 24 Order responded that a conference was unnecessary and granted *both parties* leave to file 5-page letter briefs on all the issues Plaintiff had raised.

Plaintiff's July 1, 2013 letter brief, after describing *Amex* and its impact on Plaintiff's earlier-made state law and public injunction arguments, spent half the allotted pages on the constitutional issue. *See* Dkt. 50. Contrary to Defendants' assertion, Br. at 10, Plaintiff *did* argue that enforcement of *all* adhesion arbitration contracts violated the First Amendment. Plaintiff framed the issue as "whether Congress intended to delegate to private entities the power to use adhesion contracts to deprive consumers of their fundamental First … Amendment rights to access justice," and argued that "Congress expressly rejected the notion that the FAA was intended to give powerful contracting parties the ability to use adhesion contracts to force weaker parties to submit to arbitration." Dkt. 50 at 3, 4. Plaintiff cited several of the Petition Clause and constitutional avoidance doctrine cases cited in the Objection and cited to a law review article discussing the FAA's legislative history (which could not be quoted within the 5-page limit). *Id.* Defendants wrongly claim that "Citibank never had the opportunity to address this argument in its briefing on the Motion." Br. at 10. Citibank had that opportunity in its July 10, 2013 responsive brief, but it argued only untimeliness and did not address the argument substantively.[1]

Under these facts, Plaintiff's First Amendment argument is properly before the Court. If anyone waived the right to address its merits before this Court it was Defendants.[2]

---

[1] *See* Dkt. 51 at 4-5 (addressing a "hypothetical future legislation" argument Plaintiff never made). Plaintiff would have consented to extend Defendants' time to respond, but Defendants never asked.

[2] Because Plaintiff referred Magistrate Judge Reyes to a law review article identifying the FAA legislative history quoted in the Objection, Plaintiff's submission of the actual historical materials merely conveniences the Court and does not implicate the Court's discretion to disregard *new facts* submitted with an objection. *Hynes v. Squillace*, 143 F.3d 653, 656 (2d Cir. 1998). In any event, the Court has equal discretion to consider new facts, as both 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) "explicitly permit the district court to receive additional evidence as part of its review." *Id.* Defendants' cases illustrating that district courts have discretion to ignore new legal arguments made in objections, *e.g.*, *Allen v. UPS*, 988 F. Supp. 2d 293, 299 (E.D.N.Y. 2013), do not apply here because Plaintiff made the same (albeit a necessarily shorter) First Amendment argument to the Magistrate Judge that he makes here.

Moreover, the FAA's legislative history is not factual evidence but, rather, items that aid in statutory construction of which this Court can take judicial notice. *See Castellano v. Bd. of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 754 (2d Cir. 1991); *Oneida Indian Nation v. New*

## II.     The Supreme Court's FAA Decisions Do Not Control the Constitutional Issue

Defendants' reliance on the Supreme Court's past FAA decisions to defeat Plaintiff's Petition Clause challenge, Br. at 11-14, fails to appreciate the fundamental point that the Supreme Court has never addressed the First Amendment issue that is presented here.  Contrary to Defendants' argument, *none* of the Supreme Court's arbitration decisions considered whether compelling adjudication before private individuals violates the fundamental right to petition a *government* tribunal for a redress of grievances.  None of the Supreme Court's FAA decisions even mentions much less analyzes the Petition Clause, and it cannot be assumed that the Court addressed a constitutional issue in silence – especially when no party ever raised the issue in any FAA case before the Court.  *Cf. United States v. Enas*, 255 F.3d 662, 674 (9th Cir. 2001) ("It would be extraordinary indeed if those were constitutional decisions that simply neglected to mention the Constitution. ... If there is a constitutional dimension to those decisions, we cannot divine it from the language of the opinions.").

Because the issue presented here is "different from those considered by the [Supreme Court] ..., the [Court's] decision[s] cannot be dispositive, either as collateral estoppel or even as *stare decisis*."  *Topps Chewing Gum v. Fleer Corp*., 799 F.2d 851, 855 (2d Cir. 1986).  Hence, enforcing Plaintiff's First Amendment right of petition does not require this Court to "overrule" Supreme Court precedent, as Defendants contend.  Br. at 14.  This Court cannot overrule the Supreme Court on an issue that Court never reached.  This Court is thus free to "not enforce an unconstitutional law" if it finds that the FAA, as applied, offends the Petition Clause.  *Homa v. Am. Express Co.*, 494 F. App'x 191, 196-97 (3d Cir. 2012) (discussing the FAA).

---

*York*, 691 F.2d 1070, 1086 (2d Cir. 1982), *overruled on other grounds, as stated in Cayuga Indian Nation v. Pataki*, 413 F.3d 266, 277 (2d Cir. 2005)); *Stevens v. Webb*, 2014 U.S. Dist. LEXIS 37874 (E.D.N.Y. Mar. 21, 2014) (Matsumoto, J.); *Ass'n of Home Appliance Mfrs. v. City of New York*, 2014 U.S. Dist. LEXIS 104238, *9-10 (S.D.N.Y. July 29, 2014).  *See also State v. Green*, 96 N.Y.2d 403, 408 n.2 (2001).

The Supreme Court has zealously guarded First Amendment freedoms, even for corporations.  In *Citizens United v. FEC*, 558 U.S. 310 (2010), it protected corporate and union campaign contributions as a form of free speech.  In *BE&K Construction Co. v. NLRB*, 536 U.S. 516 (2002), it held that employers have the right under the First Amendment Petition Clause to bring retaliatory lawsuits – perhaps even frivolous ones – against striking employees, even though the NLRA prohibits retaliation against legitimate union activity.  Defendants ignore that the Supreme Court has declared the right of access to courts to be "one of 'the most precious of the liberties safeguarded by the Bill of Rights,'" *id*. at 524-25 (citations omitted), and "the right conservative of all other rights," *Chambers v. Baltimore & Ohio R.R Co.*, 207 U.S. 142, 148 (1907).  Defendants do not dispute that the Supreme Court has recognized First Amendment interests unique to in-court litigation that are not advanced by private arbitration.  *See* Ob. at 7-9.

*Amex* and *Concepcion* – which considered none of these core First Amendment concerns – were 5 to 4 decisions.  In the face of the Supreme Court's strong pro-First Amendment stance, one cannot safely predict, as Defendants blithely do, that all five members of the majority in those cases would reject a properly presented Petition Clause challenge to the Court's FAA rulings.  The far more likely and correct result would be that the Court would honor the First Amendment.  Consumers do not have lesser First Amendment rights to access government courts than corporations, which given their bargaining power cannot be compelled by adhesion agreements to abandon their constitutional rights against their will.  The first and foremost duty of the Supreme Court is to uphold the Constitution, not the FAA.  *See Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 504 (2012) ("Where a specific statute … conflicts with a general constitutional provision, the latter governs.").

The Petition Clause issue is a fully open question.  It is not bound by any FAA precedent.

## III.    __Plaintiff Amply Alleges State Action__

Putting aside that they did not make this (or any other substantive) argument to the Magistrate Judge, Defendants' assertion that state action is lacking here, Br. at 15, proves too much.  If accepted, the FAA would be immune from constitutional challenges of any kind.  That, of course, is not the law.  As the Objection notes, Ob. at 4 n.6, the state action issue is controlled by *Denver Area Education Telecommunications Consortium v. FCC*, 518 U.S. 727 (1996), which Defendants ignore.  A congressional statute is by definition state action, as is a statute that enables private actors to restrict citizens' First Amendment rights.  *Id.* at 737-40.  State action exists where "Congress singles out one sort of speech for vulnerability to private censorship" when Congress itself could not do so, "regardless of whether the private acts are attributable to the State," *id.* at 782 (Kennedy, J., concurring in part, dissenting in part) (citation omitted).

Defendants' cited cases do not consider *Denver Area*, and they are distinguishable because the "specific conduct" challenged in those cases was a private entity's *use* of an arbitration clause, not the FAA's unconstitutionality.  *See Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999); *Katz v. Cellco P'ship*, No. 12-CV-9193 (VB), 2013 U.S. Dist. LEXIS 176784, at *15-16 (S.D.N.Y. Dec. 12, 2013).[3]  Plaintiff does not challenge Defendants' use of an arbitration clause, but Congress' enactment of the FAA, as it is being applied, to compel judicial enforcement of adhesion arbitration clauses, which were not enforceable under the common law prior to the FAA, *Red Cross Line v. Atlantic Fruit Co.*, 264 U.S. 109, 120-21 (1924), and which deprive citizens of their First Amendment right to petition a government tribunal.

---

[3] Despite finding no state action, the *Katz* court addressed plaintiff's constitutional arguments (which did not include a First Amendment challenge).  That court's conclusion, that the FAA's delegation of an Article III court's functions to private arbitrators does not raise separation of powers concerns while delegation to federal agencies might do so, fortifies Plaintiff's point that private arbitrators are not the "government" within the meaning of the Petition Clause.  *See* 2013 U.S. Dist. LEXIS 176784, at *23-30.

**IV.** **The FAA's Text is Ambiguous, so the Avoidance Doctrine Applies**

Defendants agree that the constitutional avoidance doctrine applies when courts are called upon to choose between "competing plausible interpretations" of a statute, Br. at 16 (citations and emphasis omitted), but they wrongly argue that the FAA is not ambiguous.  It *is* ambiguous.  Defendants read Section 2 of the statute very broadly, as applying to "'any … contract'" except the employment contracts exempted in Section 1.  Br. at 17 (quoting 9 U.S.C. § 2) (ellipses added by Defendants).  Plaintiffs read Section 2 much more narrowly because, while its text initially used the words "any contract," the Walsh Amendment deleted them in favor of the phrase "any maritime transaction or a contract evidencing a transaction involving commerce." *See* Ob. at 17, 21-22.  In Plaintiff's view, since Section 1's employment contract exemption already existed before the Walsh Amendment was made,[4] the amendment was not made to affect or impact that exemption.  Rather, its purpose was to remove the FAA's potential applicability to "take it or leave it" arbitration contracts – which no bill proponent or legislator ever said should be included – and to limit the FAA's scope to contracts among large merchants and trade association members who *voluntarily* agreed to arbitrate, which was the *sole* purpose for the FAA advocated by every proponent and legislator.  *See* Ob. at 17-22.  (Plaintiff's reading of the Walsh Amendment seems undebatable; it is certainly more plausible than Defendants' alternate reading, which would require finding that the Walsh Amendment's new phraseology meant the exact same thing as the words "any contract" the amendment edited out of the statute.)

Furthermore, the phrase "a contract … involving commerce" is also ambiguous, because "commerce" means something very different today than in 1925 when the FAA was passed.  Using Congress' 1925 understanding of the word – which is the standard rule for interpreting

---

[4] *See* Plaintiff's Appendix of Historical Materials, Tab E, 66 Cong. Rec. 2759-60 (1925).

statutes – would exclude adhesion consumer contracts from the FAA's scope, while using a dynamic interpretation using today's meaning – which the current Supreme Court rarely does – would likely include them within the FAA's scope. *See* Ob. at 12-14, 23-24. The existence of this ambiguity is confirmed by the two Supreme Court FAA cases on which Defendants rely. *See* Br. at 18 n.12. In *Circuit City Stores, Inc. v. Adams*, Justice Souter's dissent expressly states that "there are two quite different ways of reading the scope of the Act's provisions," one based on Congress' 1925 understanding of its "far narrower" commerce power, and an "elastic understanding" based on the commerce power's "modern conception." 532 U.S. 105, 133-34 (2001) (Souter, J., dissenting). The majority acknowledged the two alternatives, *id*. at 116-17, and it conceded that "the historical arguments respecting Congress' understanding … in 1925 are not insubstantial," *id*. at 119. In *Allied-Bruce Terminix Cos.*, *Inc. v. Dobson*, the Court recognized the same ambiguity. *See* 513 U.S. 265, 275 (1995) ("The pre-New Deal Congress that passed the Action in 1925 might well have thought the Commerce Clause did not stretch as far as has turned out to be the case."). *See also id*. at 286, 292 (Thomas, J., dissenting) (the FAA must be interpreted as of "the time of [its] passage in 1925" – a "later development" in the law "does not mean [it was] so understood in 1925" and "could not change the original meaning of the statute that Congress enacted in 1925") (discussing whether FAA applied in state courts).[5]

The avoidance doctrine, therefore, applies to this case. *Compare Pierre v. Holder*, 738 F.3d 39, 48 (2d Cir. 2013) ("legal custody" not ambiguous) *with United States v. Magassouba*, 544 F.3d 387, 404-10 (2d Cir. 2008) (using doctrine to avoid due process problem).

---

[5] We note that Plaintiff's Objection erroneously cited *Circuit City* at page 24 instead of *Allied-Bruce*. The latter case was where the Supreme Court applied an "dynamic" meaning of "commerce" under the modern Commerce Clause, rather than Congress' far narrower 1925 understanding, in order to read the scope of FAA Section 2 broadly. *See* 513 U.S. at 274-75. In *Circuit City*, the Court declined to apply a similar "variable" definition of "commerce," in order to read Section 1's employment contract exception narrowly. *See* 532 U.S. at 116-19; *id*. at 133-34, 137 (Souter, J., dissenting).

## V.   **The 1925 Congress had No Clear Intent to Infringe the Petition Clause**

Because the FAA's text is ambiguous, the rules for interpreting unambiguous statutes that Defendants cite do not apply.[6]   Courts are permitted to look to the FAA's legislative history even under Defendants' cases, and they *must* to do so under the constitutional avoidance doctrine.   *See* Ob. at 10-12.   The legislative history seems to be clear and unambiguous as to Congress' intent to exclude adhesion contracts from the FAA's scope.   *See* Ob. at 15-22.   Defendants argue that "the FAA's legislative history is far from conclusive on this point," Br. at 18 n.13, but that at best suggests the legislative history is ambiguous; Defendants describe nothing in either the FAA's text or its legislative history that reveals a "clear intent" by Congress to abridge individual consumers' First Amendment rights.[7]   Because reading the statute as excluding adhesion agreements is both reasonable and not foreclosed by its text or legislative history, the avoidance doctrine compels reading the FAA in a manner that complies with the Constitution. *See United States ex rel. Att'y Gen. v. Delaware & Hudson Co.*, 213 U.S. 366, 407 (1909) (citation omitted); Ob. at 9-10.

---

[6] While Defendants take issue with Plaintiff's reliance on a 1925 dictionary to show that Congress understood "commerce" to mean transactions among large scale merchants, Br. at 17 n.12, reliance on contemporaneous dictionaries is how the Supreme Court ascertains Congress' textual intent. *See, e.g., Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876-77 (2014); *Kouichi Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002-03 (2012); *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1264 (2011).   Defendants, importantly, have not offered a contrary 1925 definition, so Plaintiff's definition stands unopposed.

[7] Defendants' argument that ambiguity exists in the legislative history rests solely on *Allied Bruce*'s dictum that Congress "had the needs of consumers, as well as others, in mind."   513 U.S. at 280.   The 1924 Senate Report the Court cited, however, does not mention consumers.   It states that: "The settlement of disputes by arbitration appeals to big business and little business alike, to corporate interests as well as to individuals."   *See* Plaintiff's Appendix, Tab D, S. Rep. 68-536, at 3 (1924).   The Senate was plainly referring to individual business owners who were trade association members or who engaged in interstate or foreign trade, not to ordinary consumers.   The 1982 House Report *Allied Bruce* cited also does not mention consumers.   *See* 513 U.S. at 280 (citing H.R. Rep. No. 97-542, at 13 (1982)).

Defendants state that "[n]umerous legal scholars" opine that the FAA "unambiguously" applies to adhesion contracts, but the two they cite fail to address either the significance of the Walsh Amendment or the 1925 definition of "commerce."   Scholars who have performed a more thorough analysis take the opposite view.   *See*, *e.g.*, Margaret L. Moses, *Statutory Misconstruction: How The Supreme Court Created A Federal Arbitration Law Never Enacted By Congress*, 34 Fla. St. U.L. Rev. 99, 106-08 (2006).

## VI.    Private Lawsuits are Protected Petitions under the First Amendment

Defendants argue that the Petition Clause does not apply to lawsuits, Br. at 19, but they do not dispute the overwhelming textual and historical evidence to the contrary.  *See* Ob. at 5-7. Defendants' argument is based entirely on the *Borough of Duryea v. Guarnieri* dissent claiming that the Supreme Court has never held that the Petition Clause protects lawsuits, 131 S. Ct. 2488, 2503 (2011) (Scalia, J., dissenting), but the seven-Justice majority squarely rejected that proposition, *id*. at 2494.   The Second Circuit has also squarely held that the Petition Clause protects the right to sue in court.  *See City of New York v. Beretta U.S.A. Corp*., 524 F.3d 384, 397 (2d Cir. 2008), *cert. denied*, 556 U.S. 1104 (2009); *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir. 1988).  No court, moreover, has ever held that an adhesion arbitration clause renders the Petition Clause irrelevant.[8]

## VII.    The FAA, As Applied, Violates the Petition Clause

Defendants' argument that the FAA "does not prohibit" access to courts, Br. at 20, does not, and as a matter of law cannot, save the FAA from Plaintiff's First Amendment challenge.  A statute impairing the free exercise of a fundamental right does not have to amount to a total prohibition to be unconstitutional.   Statutes that merely chill or discourage the exercise of fundamental rights also violate the Constitution.  *See*, *e.g*., *Citizens United*, 558 U.S. at 336-37 (citing examples).  Any statute that "obstructs" or hinders the right to access government courts

---

[8] The cases cited in support of Defendants' contention that courts have rejected constitutional challenges "similar" to Plaintiff's Petition Clause challenge, Br. at 16 n.11, did not, in fact, address the Petition Clause.  Two parallel decisions in *Hancock v. AT&T Co., Inc.*, cryptically relied on the Supreme Court's FAA cases to reject the plaintiffs' even more cryptic argument that the Commerce Clause conflicted with "the Bill of Rights," and found that "certain guaranteed rights, including the right to a trial by jury under the seventh amendment" had been waived.  *See* 804 F. Supp. 2d 1196, 1213-14 *and* No. Civ. 10-822-W, 2011 U.S. Dist. LEXIS 93928, at *35-36 (W.D. Okla. Aug. 11, 2011), *aff'd on other grounds*, 701 F.3d 1248 (10th Cir. 2012).  In *Struthers v. UBS Fin. Servs.*, No. 08-CV-1381 H (JMA), 2009 U.S. Dist. LEXIS 38671, at *14 (S.D. Cal. May 7, 2009), the court declined to consider unspecified constitutional arguments that were raised for the first time on a motion to amend an earlier judgment of dismissal.

violates the First Amendment.  *See Boddie v. Alexander*, 356 F. App'x 438, 440-41 (2d Cir.

2009); *Franco*, 854 F.2d at 588-89 ("'[T]he right of access to the courts is substantive rather than

procedural …. [It] cannot be obstructed, regardless of the procedural means applied.'") (quoting

*Morello v. James*, 810 F.2d 344, 346-47 (2d Cir. 1987)); *Acevedo v. Surles*, 778 F. Supp. 179,

184 (S.D.N.Y. 1991) (plaintiffs were "chilled in seeking access to the courts" by state agency's

practice of filing liens against them).

　　　　The Supreme Court has held that the First Amendment is violated when one form of

advocacy is obstructed, even if other forms of advocacy remain available:

> The First Amendment protects the right of an individual to speak freely, to
> advocate ideas, to associate with others, and to petition his government for redress
> of grievances.  And it protects the right of associations to engage in advocacy on
> behalf of their members. … The government is prohibited from infringing upon
> these guarantees either by a general prohibition against certain forms of advocacy,
> …or by imposing sanctions for the expression of particular views it opposes ….

*Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 464 (1979) (citing *NAACP v. Button*, 371 U.S.

415 (1963) (state could not prevent group of similarly situated persons from banding together to

bring lawsuits)) (other citations omitted).  Furthermore, while a state official has discretion to

ignore a petition, Congress cannot *require* a government official to ignore a petition.  *See id.* at

464-66.

　　　　The FAA unquestionably obstructs litigants' ability to use one form of advocacy by

impairing and disabling the full and free exercise of their right to petition a government court.

The FAA *requires* courts both to "stay" consideration of any lawsuit referable to arbitration and

to confirm a private arbitrator's decision except in the very limited circumstances of fraud,

corruption or misconduct, thereby severely restricting, and in most cases removing altogether,

the court's discretion to consider the petition on the merits.  *See* 9 U.S.C. §§ 3, 9-11; *Hall Street

Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582-83 (2008) (FAA provides exclusive, limited

grounds for vacating arbitrator's award).  The "stay" and removal of the court's discretion mandated by the FAA, by definition, "abridge" and "obstruct" Plaintiff's First Amendment right to have his grievance redressed by a government court.[9]

Defendants' argument that the FAA satisfies the Petition Clause because it enables Plaintiff an exceedingly narrow "opportunity to file a lawsuit in court and challenge the existence or validity of the Arbitration Agreement in court," Br. at 21, overlooks that the FAA also curtails and abridges Plaintiff's right to do virtually anything else in court, including having the merits of his dispute heard and adjudicated by a court.  The Petition Clause guaranties Plaintiff a right to sue in court "for *a redress* of grievances."  U.S. Const. amend. I (emphasis added).  A "redress" is "the setting right of what is wrong … relief from wrong or injury … compensation or satisfaction for a wrong or injury."  *Webster's*, *supra* n. 9, at 1617.  The FAA prevents consumers from obtaining any *redress* of a grievance in court if they have been subjected to an adhesion arbitration clause, and it precludes consumers from seeking merits review by a court of an arbitrator's refusal to grant redress, absent corruption or other misconduct.  By virtually eliminating any meaningful right to have Plaintiff's dispute *redressed* by a government court, and mandating private arbitration instead, the FAA cuts off and obstructs one "form[] of advocacy," *Smith*, 441 U.S. at 464 – *i.e.*, in court advocacy – and abridges the Petition Clause.[10]

---

[9] The First Amendment prevents "abridging" access to the courts.  U.S. Const. amend. I.  To "abridge" does not mean to bar absolutely; it means "to reduce or lessen …; diminish; curtail."  *Webster's Encyclopedic Unabridged Dictionary of the English Language* 6 (1996).  Synonyms of "obstruct" include "choke, clog, hinder, impede, prevent; check, slow, retard, arrest." *Id*. at 1338.  To "stay" means: "*Law*. a stoppage or arrest of action; suspension of a judicial proceeding."  *Id*. at 1862.  Thus, by definition, a statute that stays or hinders access to a government court "abridges" the Constitution.

[10] There is certainly sufficient doubt about the FAA's constitutionality to construe it, under the avoidance doctrine, as excluding adhesion agreements.  *See United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916); Ob. at 9 n.34.  In this circuit, the FAA may also violate the Due Process Clause's guarantee of "meaningful access" to the courts.  *See Grullon v. City of New Haven*, 720 F.3d 133, 142 (2d Cir. 2013).  A separation of powers problem bodes as well since the Supreme Court has invaded Congress' prerogative by re-writing the FAA.  *See generally* Moses, *Statutory Misconstruction*, *supra* n. 7.

Congress could not, one would think, without violating the First Amendment enact a law forbidding executive or legislative branch officials from considering the merits of any petition seeking redress against a corporation and mandating, instead, that the petition be addressed solely by private persons chosen by that corporation, whose determination would be binding on Congress or the Executive absent misconduct. Yet that is precisely how the FAA functions as to the judicial branch whenever it is applied to adhesion agreements. That is unconstitutional.

Honoring the First Amendment right to sue in court above the FAA does not equate to "hostility to arbitration." It reflects necessary and proper fealty to both the highest law of our land, the Constitution, and to the actual statutory intent of 1925 Congress that enacted the FAA.[11]

## VIII.   Plaintiff Did Not Waive His Right to Petition a Government Court

Defendants' waiver argument raises a question that is entirely separate and distinct from the issue of the FAA's constitutionality.[12] That said, Plaintiff agrees that the right to access a government court can be waived, subject to the same standards that apply to waivers of other fundamental constitutional rights. Those standards are well settled: (i) the Court must "'indulge every reasonable presumption against'" finding a waiver of a constitutional right, *Doe v. Marsh*, 96-7453, 1997 U.S. App. LEXIS 5065, at *12 (2d Cir. Mar. 17, 1997) (citation omitted); (ii) any such waiver must be "knowing, voluntary and intelligent"; and (iii) it must be "based upon clear and compelling evidence," *Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 259

---

[11] Concern over the First Amendment interests that the Supreme Court has defined as unique to private in-court litigation and which are not promoted by private arbitration was not a component of the pre-FAA "judicial hostility to arbitration," as Defendants imply. Br. at 21-22. Nor is it identified as a component in the Supreme Court cases Defendants cite. The main reason for the old judicial hostility was powerful entities' tendency to use adhesion agreements to reduce weaker parties' rights to a remedy, something to which Congress was equally hostile and prevented through the Walsh Amendment. *See* Ob. at 20-21.

[12] Because the FAA cannot be interpreted as applying to *any* adhesion compulsory arbitration clause given the grave First Amendment problems, the FAA does not apply even to consumers who have validly waived their Petition Clause rights. Whether such consumers can be compelled to arbitrate is a function of state law. But this is not at issue in this case, since Plaintiff has not waived his right to sue in court.

(E.D.N.Y. 2012) (Spatt, J.) (citing *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 145 (1967) (First Amendment right not waived)) (other citations omitted).  *See also Dodson v. Bd. of Educ.*, 2014 U.S. Dist. LEXIS 118092, at *10-11 (E.D.N.Y. Aug. 25, 2014) (Seybert, J.) (citations omitted).

"These standards apply to contractual waivers of constitutional rights." *Murray*, 853 F. Supp. 2d at 260. "'[A] party waiving constitutionally protected rights – even when doing so through the execution of a contract – *must … be made aware of the significance of the waiver*.'" *Id*. (citation omitted) (emphasis added); *see id*. at 260-61 (settlement agreement not sufficiently unequivocal to waive right to sue).  A party waiving such rights must do so "*of its own volition*, with *full understanding of the consequences* of its waiver." *Erie Telecomms. v. Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988) (emphases added).  *See also Fuentes v. Shevin*, 407 U.S. 67, 94-95 (1972) (consumer without bargaining power did not waive due process rights via corporate form contract); *Legal Aid Soc'y v. City of New York*, 114 F. Supp. 2d 204, 227 (S.D.N.Y. 2000) (First Amendment rights not "explicitly mentioned" in contract not waived).

These contractual waiver standards apply as equally to arbitration agreements as to other contracts.[13]  In an analogous situation, Judge Cote held that a plaintiff who agreed to a "final and binding" agency review without being given "clear and explicit notice … of the opportunity for redress" in court lacked "'awareness' of the consequences of the waiver" of his right to appeal in court. *Morris v. N.Y.C. Emps. Ret. Sys.*, 129 F. Supp. 2d 599, 601-03, 609-10 (S.D.N.Y. 2001). Absent being given "greater clarity" as to his opportunities for redress in court, his waiver of the right to proceed in court could not be "considered an informed decision." *Id*. at 611.

---

[13] Indeed, the waiver standards harmonize perfectly with the "voluntarily and solemnly entered into" arbitration agreements waiving the right to sue in court to which Congress intended the FAA to apply. *See* Ob. at 22.  The constitutional waiver standards, however, are in complete discord with the concept of adhesion arbitration agreements being imposed on consumers by parties with superior bargaining power given that in such cases the consumers do not enter those agreements of their own free will and volition.

The Supreme Court of New Jersey likewise recently applied comparable standards under that state's law to find that a plaintiff had not waived her right to sue in court in an arbitration agreement that did "not explain what arbitration is" or how arbitration differed from and precluded a court proceeding, and which did not make "clear and understandable to the average consumer that she is waiving statutory rights." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 219 N.J. 430, 446-47 (2014). *See also Allstar Homes v. Waters*, 711 So. 2d 924, 930-35 (Ala. 1997) (Cook, J., concurring) (reviewing FAA's legislative history and concluding that transactions involving adhesion arbitration clauses effect "clearly involuntary" waivers of Seventh Amendment jury trial rights).

Here, there is no "clear and convincing evidence," *Marsh*, that Plaintiff "knowingly and intelligently," *Murray*, waived his Petition Clause rights of his "own volition," *Erie*. Although Defendants' arbitration clause states that arbitration replaces the rights to go to court, a jury and a class action, and that only individual relief would be granted, R&R at 3-4, it did not "mention" that Plaintiff had a First Amendment right to sue in court, *Legal Aid*, and did "not explain what arbitration is" or how it differed (*e.g.*, arbitrator is not bound by rules of law or evidence), *Atalese*. Critically, it did not give "clear and explicit notice" of the "opportunity for redress" that Plaintiff would have in court but *lose* in arbitration, *Morris* – namely, the ability to stop Defendants from defrauding other customers, and that he would be effectively *precluded from any remedy altogether* if the cost of individual arbitration exceeded his maximum recovery.

Absent Plaintiff having this "full understanding of the consequences" and "significance of the waiver," *Erie*; *Murray*, and after "indulg[ing] every reasonable presumption against" finding a waiver, *Marsh*, no waiver can be properly found in this case.[14]

---

[14] Defendants' cases do not change this result. *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 244 (2d Cir. 2001), did not address waiver at all. The cases from other circuits are contrary to the waiver law of

## CONCLUSION[15]

For the foregoing and all previously stated reasons, Plaintiff's Objection should be sustained, and Defendants' motion to compel arbitration should be denied.

Dated: December 19, 2014                    Respectfully submitted,

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

By:  /s/Alexander H. Schmidt
          Alexander H. Schmidt
Jeffrey G. Smith
270 Madison Avenue
New York, New York 10016
(212) 545-4600

**HARRY I. KATZ, P.C.**
61-25 Utopia Parkway
Fresh Meadows, New York 11365
(718) 463-3700

***Attorneys for Plaintiff Mark Frankel***

---

this circuit.  They also overlook (i) that the right to sue in court (which they say is the predicate for invoking the jury trial right) is *itself* a constitutional right under the Petition Clause, and (ii) that *any* contract that purports invalidly to waive a constitutional right is revocable under FAA § 2's saving clause. *See Altalese*, 219 N. J. at 441, 443.  Consequently, those cases errantly apply contractual offer and acceptance waiver standards rather than the "knowing, voluntary and intelligent" standard the Supreme Court has employed in every case involving a waiver of a fundamental right.  To the extent those cases address an Article III "right to a judicial forum" argument, they are inapposite.  The Article III argument involves separation of powers principles and the attendant right to sue in a court that is free from Executive or Legislative branch influence.  *See* n. 3, *supra*.  The Petition Clause right to sue in court concerns the wholly distinct First Amendment right of citizens to seek redress from the Government.

[15] As a final point, Plaintiff notes that the presumption in favor of arbitrability does not apply to this case because Plaintiff has challenged the validity and enforceability of Defendants' arbitration clause rather than its scope.  *See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (presumption applies only as to the scope of a valid and enforceable arbitration agreement).

Plaintiff, furthermore, rests on his previously stated arguments concerning his right to an in-court remedy under South Dakota law.